LOUISA WATERS et al. *v.* ANNA G. BOSSEL.

Chancery Practice — Note Set up in Answer as Payment.

   While a Court of Equity will not ordinarily entertain the subject of set-off unless set up in a cross-bill, yet if a note is set up in the answer of the defendant as evidencing a settlement and payment of the claim sued on, it is error to exclude evidence in support of it and to ignore it.[1]

Appellee owned several lots in Biloxi, Miss., encumbered by two mortgages, one for $2,000 and another for $1,000 in favor of F. Amare.

---

1

   The Chancery Court will not ordinarily entertain the subject of set-off in respect to unconnected demands, unless some peculiar equity has intervened, as where a credit has been given by each creditor upon the footing of a debt by the other, so as to raise the presumption that it was understood that one should liquidate the other. Perkins v. Coleman, 51 Miss. 298.

   Where one borrows a sum which is secured by trust deed, and shortly afterwards loans to his creditor a less amount in gold, for which the latter agrees

On March 19, 1876, she sold the lots to appellant for $10,-000; $4,000 cash, and the assumption of the mortgage debts to Amare and the deed of conveyance by Mrs. Bossel, which was signed and acknowledged by Mrs. Waters, contained a stipulation as follows:

"And in liquidation of the balance of $3,000 to the said Mrs. Waters, the purchaser, has given, granted, confirmed and constituted, and by these presents does give, grant, confirm and constitute unto the said Mrs. Anna G. Bossel, and she accepting the same, one annuity or rent charge of $300, to be received, taken, had and issuing out of said property, to have and to hold the same annuity or yearly rent charge of $300 unto the said Anna G. Bossel for and during her natural life, payable and to be paid monthly, at the rate of $25 per month, to commence March 1, 1876." A special mortgage was retained in the conveyance to secure the payment of the purchase money, and for all the promises and agreements set out in the agreement.

Mrs. Bossel filed her bill in the Chancery Court of Harrison county in January, 1880, against Mrs. Waters and her husband, charging that Mrs. Waters had failed and refused to pay the notes to Amare, and had failed and refused to pay to monthly stipends of $25 per month to complainant. She asked for an accounting on the notes to Amare and the sums due her, and for sale of the land to pay the amount found due. From a decree granting the relief sought in the bill, Mrs. Waters appealed to the Supreme Court, and the decree was reversed and the cause remanded. See 58 Miss. 602. After it was remanded the defendant obtained leave to file an amended answer. The answer set up the fact that in 1877 a settlement was made between complainant and defendant of all moneys advanced complainant for and at her request, and for all money due complainant for rent or otherwise,

---

to pay, on demand, a fixed amount in currency, and the borrower does not call for this, but continues to make payments on his note until he supposes the debts will set-off each other, equity will enforce the set-off in favor of such borrower, notwithstanding the Statute of Limitations would otherwise bar the payment of the note in his favor. Perkins *v.* Coleman, 51 Miss. 298.

But a judgment debtor, on the ground of plaintiff's insolvency, cannot, in equity, set-off against the judgment demands against the plaintiff acquired pending the action, or after the judgment was rendered. Desearn *v.* Babers, 62 Miss. 421.

and for annuity, and complainant was on such settlement found to be due the sum of $1,200, and complainant made and executed and delivered to defendant her promissory note in writing, and promised to pay same twelve months after the emancipation of Godfrey H. Fredricks, with 8 per cent interest, said note to be paid in monthly installments of $25 per month. This note is made exhibit 3 to the original bill. The cause was set down for hearing on the bill, answer, exhibits and proofs. On final hearing the chancellor rendered a decree reciting: "The proof touching the notes alleged to have been given by complainant having been submitted, subject to objections, and the court being of the opinion that the evidence touching the execution of said note is irrelevant, because no issue is presented by the pleadings touching the same, because the existence and execution of said note is set up in the answer as new and affirmative matter, and is not responsive to the bill, and not by way of cross-bill, the evidence is, therefore, excluded from the consideration of the court." The decree ordered an accounting of the amount due complainant on the rent charge, taking no notice of the note, and ordered the lots sold to pay same. The decree recited that it was rendered without prejudice to the right of defendant to enforce the collection of the note either by suit at law or in equity. From that decree defendant appeals.

APPEALED from Chancery Court, Harrison county, GEO. WOOD, Chancellor.

Reversed and remanded, March 19, 1883.

*Attorneys for appellant, Seal & Cullen.*

*Attorney for appellee, Charles H. Wood.*

Brief of Seal & Cullen:

The appellee filed her bill in the Chancery Court of Harrison county, Mississippi, to recover an annuity claimed to be due and unpaid by appellants, secured in the sale of the land described in her bill, sold by Mrs. Bossel to Mrs. Waters, at $25 per month. The bill fails to state what sum was due, or what amount had been paid on the annuity, and also to foreclose a mortgage that Mrs. Bossel had given to F. Amare on the same property.

To this bill appellants filed an answer under oath, denying positively that they owed anything on the annuity, and showing how and in what manner the annuity had been paid from time to time. In the answer the exhibits show that they had paid all that was due in the month of March, 1879. The testimony taken clearly shows that, in addition and since the transfer was made, they paid to Messrs. Dowling & Co. $400 for Mrs. Bossel, and at her request, and this sum should be applied to the payment of the annuity.

Appellee was overpaid when this bill was filed. If this view of the case is correct, and there can be no doubt about it, as the evidence on this point cannot be, and is not, questioned or denied, then there was no ground or reason for filing this bill, and it should be dismissed.

Again, in the early part of the year 1877, and after the transfer was made and the annuity stipulated for, a settlement was had between the parties for money advanced, etc., and the appellee, at said settlement, was found to be due appellant, Mrs. Waters, in the sum of $1,200. In order to secure the payment of this sum, Mrs. Bossel made and delivered to Mrs. Waters her promissory note in writing, and thereby promised to pay to the order of Mrs. Waters said sum of $1,200, with 8 per cent interest per annum, twelve months after the emancipation of Godfrey H. Frederick, to be paid in monthly installments at the rate of $25 per month. The proof is that said Godfrey H. Frederick was emancipated December 24, 1878. Then, from and after December 24, 1879, the monthly installments commenced to be due; and, by an agreement, these installments were to be applied as a set-off to the *monthly* annuities until the whole of the $1,200 note, with interest, had been paid.

The pleadings narrowed the issue down to one fact—was there anything due appellee *when* she filed her bill for annuity? This now being the issue, it is as clear as evidence can make it that Mrs. Bossel was indebted to Mrs. Waters, when this bill was filed, in several hundred dollars. The plaintiff (or appellee) must come into court with clean hands and with proper pleadings and clear proof to establish her right to recover *before she can recover.*

In the face of the pleadings and evidence, the learned chancellor held, under a formal decree, that the evidence touching said note was not relevant to the issue, but must be made as a cross-

bill and set up as new matter; that a party cannot set up the defense to the bill, by answer, that the money claimed as annuity had been paid before the bill was filed (the very issue in the case), but must be set up in the way of defense by a cross-bill. This is certainly a novelty in pleading payment, and sends the party back for redress for payments to a court of equity or *at law*, and then proceeds to direct the clerk how to calculate the interest due on the annuity, regardless of the subsequent payments.

Appellant's exceptions to the master's report should have been sustained and the bill dismissed under the former decision of this court. Appellee should have made F. Amare a party in the proceeding—he is left out in the cold—and the property described decreed to be sold, regardless of F. Amare's rights in a prior mortgage.

Brief of Chas. H. Wood:

This case, when before this court, was narrowed down to a simple question for the Chancery Court below to decide. See Waters *v.* Bossel, 58 Miss. 602. Counsel for complainant in the court below set the cause down for hearing upon bill of complaint, the exhibit, and answer of the defendants, and proof on file. No new pleading altered the case from what was shown before this court when the case was here, except some more evidence in support of the $1,200 note set up in defendant's answer.

This set-off is the main defense of the defendants in the court below. The answer admits the allegations of the bill that nothing as annuity has been paid Mrs. Bossel, except alleging the $1,200 note as payment, from March, 1879, of this annuity or rent charge.

Our court says: "As a general rule, courts of equity do not entertain the subject of set-off in respect to unconnected demands." Perkins *v.* Coleman, 51 Miss. 298.

The object of a suit of foreclosure is to obtain satisfaction from the lands, and it is inconsistent with the nature of such mortgage security to allow set-off. Amer. Chan. Dig., vol. I, p. 445. § 22.

Courts say, where such counter claims exist and are liquidated, the course of the proceedings in equity requires that they should be presented by way of a cross-bill. 1 vol. Amer. Chan. Dig., p. 445, § 22; Code 1871, § 1030; Laws Miss. 1876, p. 183, § 12.

If the courts should hold that the matter of the $1,200 set up

in defendant's answer was before the court, then if the consideration of the conveyance is a covenant to pay an annuity to the vendor, other stipulations made after the purchase will not bar the vendor from receiving the annuity unless she expressly agreed to the subsequent transaction to be in lieu of the payment of the annuity. Dart on Vendor and Purchaser, 345, and note; 2 Story Eq. Juris. 1233; Davis *v.* Hamilton et al., 50 Miss. 213.

Mrs. Bossel alleges and proves that her annuity has not been paid since 1st March, 1879. The defendant does not deny this, except relying on the set-off of $1,200 as payment.

The question was settled in this court, when this case was before it at a former term, that Mrs. Bossel can recover, under the proceedings in the Chancery Court of Harrison county, any part of the annuity that may be due her. 58 Miss. 602, above cited.

I respectfully submit that the decree of the Chancery Court at the September term, 1882, is correct and should be affirmed, with damages and interest.

OPINION.—CHALMERS, J.:

It was erroneous to suppress or ignore the testimony with reference to the note filed as exhibit 3 to defendant's answer. True, the answer was not made a cross-bill, and no relief was prayed as to the note, but it was set up by the answer as evidencing a settlement and payment between the parties. In this aspect, it was purely defensive and should have been considered and passed upon by the court. Looking at it in this light, it suggests by its own recitals, and the suggestion is made conclusive by the testimony of the witness, Garrett, that it was intended as a payment *pro tanto* of the annuity or rent charge due from defendant to complainant. The transaction was this: Mrs. Waters owed Mrs. Bossel a monthly stipend or rent charge of $25 per month. She had expended for and advanced to her, at the time of the execution of this note, the sum of $1,200, or thereabouts, in excess of the rent charges; Mrs. Bossel executed this note as evidencing this indebtedness, but it was never intended that the note should be paid in money, but, on the contrary, the intention was that the annuity or rent charge should be regularly paid until one year after the emancipation of the grandson, Frederick, and at that date the payment of the annuity should cease until the note should become extinguished by the accrual of a sufficient

sum at $25 per month to accomplish that result; in other words, that the sum due each month on the note should be set off against the same sum due on the annuity until the note itself should be extinguished by lapse of time and the consequent accrual of an amount sufficient to pay it off. This would be accomplished in about four years, so that the practical effect of the scheme was to stop the annuity for that time. Calculation should have been made of the annuity up to the date of maturity of the note, giving credit, of course, for all payments shown to have been made on the annuity. Then for four years, or such period as it would take to consume the note at $25 per month, the annuity would cease, and, after such last-mentioned period, the annuity would revive and run as before. If an account stated on this basis shall show that there was nothing due Mrs. Bossel when the bill was filed, it must be dismissed without prejudice to her right to file another one for whatever may have since become due. If anything was due when the bill was filed, the account should be taken down to the hearing and a decree awarded for the whole sum.

An order should be entered at once restraining Mrs. Waters from proceeding at law to collect the note. The note should be withdrawn from the Circuit and filed in the Chancery Court, there to stand as an offset to the monthly accruals of the annuity until it is in this method extinguished, and the final decree should stand as a continuing security for the faithful monthly payment of the annuity, with the right each month to have execution issued for the amount due. The final decree, in short, should be so drawn as to carry out and make effective the true understanding of the parties as here explained.

If the entry of such a decree is rendered impossible by reason of the fact that nothing was due when the bill was filed, nothing can be done but to restrain defendant from proceeding at law to collect the note, and then dismiss the bill without prejudice.